# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AARON S.[1]**, | Case No. 3:20-cv-768-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | |
| Defendant. | |

Kevin S. Kerr, KERR, ROBICHAUX, & CARROLL, 626 SE Alder Street, P.O. Box 14490, Portland, Oregon 97293. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Katherine Watson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Aaron S. seeks judicial review of the final decision of the Commissioner of

Social Security for the denial of his application for Disability Insurance Benefits (DIB) under

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Title II of the Social Security Act (Act). For the following reasons, the Commissioner's decision is REVESED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB on July 20, 2016. AR 17. His alleged disability onset date is July 1, 2016. *Id.* He was 35 years old at the time of his alleged onset date. *Id.* at 19. Plaintiff's

alleged impairments include diabetes mellitus I, peripheral neuropathy, diabetic retinopathy,

depression, anxiety, chronic kidney disease, difficulty concentrating, and dizziness. AR 272.

The Commissioner first denied Plaintiff's claim on December 19, 2016, and upon

reconsideration on February 13, 2017. AR 126, 132. In response, on February 16, 2017, Plaintiff

filed a request for a hearing. AR. 135. Plaintiff attended an initial hearing with Administrative

Law Judge (ALJ) Rudolph Murgo on August 23, 2018, and then a supplemental hearing on

February 11, 2019. AR 152, 187. On March 6, 2019, the ALJ issued a decision finding Plaintiff

not disabled. AR 14. Plaintiff requested a review of the ALJ's decision by the Appeals Council.

AR 2. The Appeals Council denied review on March 6, 2020, making the ALJ's decision the

final decision of the Commissioner. AR 2. Plaintiff now seeks judicial review of the ALJ's

decision. *Id.*

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements

of the Social Security Act through December 31, 2021. AR 19. At step one of the analysis, the

ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged

onset date. *Id.* At step two, the ALJ found that Plaintiff had the following medically severe

impairments: diabetes mellitus I, peripheral neuropathy, an eye disorder, hidradenitis

suppurativa,[2] an anxiety disorder, an affective disorder, and attention deficit hyperactivity

disorder. AR 19. At step three, the ALJ determined that none of those impairments met or

---

[2] "Hidradenitis suppurativa is a skin condition that causes small, painful lumps to form under the skin. The lumps can break open, or tunnels can form under the skin." https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306 (last visited July 30, 2021).

equaled the severity of any impairment listed in 20 C.F.R. part 404, subpart P, Appendix 1.

AR 20-21. Next, the ALJ determined Plaintiff's RFC and found that he could perform

> sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes or scaffolds. The claimant can occasionally crouch, crawl, kneel, balance, stoop, and climb ramps and stairs. The claimant must avoid extreme temperatures and wetness. He cannot be exposure to hazards. He is further limited to simple instructions and occasional public contact.

AR 22.

At step four, the ALJ concluded that Plaintiff could not perform past relevant work.

AR 29. At step five, the ALJ determined that Plaintiff is capable of successfully adjusting to

other work that exists in significant numbers in the national economy. AR 30. The ALJ identified

three jobs that Plaintiff could perform: escort vehicle driver, touch up screener, and document

preparer. AR 30.

## DISCUSSION

Plaintiff alleges that the ALJ erred in three respects: (1) by discounting Plaintiff's

symptom testimony  (2) by giving less weight to the opinion of Plaintiff's treating physician,

Dr. Keller; and (3) by not meeting his burden at step five. The Court addresses each argument in

turn.

## A.  Plaintiff's Subjective Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and

limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of

an underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting

*Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant

need not show that her impairment could reasonably be expected to cause the severity of the

symptom she has alleged; she need only show that it could reasonably have caused some degree

of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons

for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may

not, however, make a negative credibility finding "solely because" the claimant's symptom

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d

at 883.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms," but that Plaintiff's complaints concerning the

"intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record." AR 23. The ALJ provided three reasons for

discrediting Plaintiff's subjective symptom testimony: (1) failure to comply with recommended

medical treatment; (2) improvement with treatment; and (3) that the objective medical evidence

did not support Plaintiff's alleged symptoms. Plaintiff concedes that his eye disorder is stable

and mostly within normal readings but disputes that his other symptoms are not disabling. The Court considers whether the reasons provided by the ALJ are clear and convincing and supported by substantial evidence in the record.

### 1. Noncompliance

The ALJ stated that there was "evidence of possible medication and diet noncompliance." AR 23. The ALJ concluded that this evidence "suggest[ed] that the claimant does not have a sincere interest in achieving medical and functional improvement or that his symptoms are not bothersome enough to lead him to follow his doctor's advice." *Id.*

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Thus, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* Social Security Rule (SSR) 16-3p, *available at* 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

The ALJ did not consider the reasons Plaintiff sometimes failed to follow his diet. Plaintiff was diagnosed with diabetes when he was 14. AR 607. The record shows that his diabetes was historically not well controlled. *See, e.g.*, AR 626 (lab result from September 2014, two years before Plaintiff applied for DIB, showing his A1C level was 10.2); AR 628-29 (lab results from March 2015, showing his glucose level was 279 and A1C was 10.3); AR 607 (chart note reporting that Plaintiff explained "he has always had poor control" of his diabetes). On October 11, 2016, Plaintiff began care with Sarah C. Soltman, M.D., a doctor at the Harold Schnitzer Diabetes Health Center at OHSU. She noted that Plaintiff "lacks knowledge about basic concepts like carb/correctional dosing and when to dose insulin related to meals and why." AR 611. Dr. Soltman recommended that Plaintiff "needs education" and "work on [a] diabetic diet." *Id.* Two months later, Dr. Soltman recommended a review of diabetes fundamentals and a focus on improving diet. AR 869. A few months after that, Dr. Soltman noted that hidradenitis suppurativa might be causing some of Plaintiff's glucose variability and hyperglycemia. AR 1106. Dr. Soltman also wrote that Plaintiff appeared overwhelmed with the calculations he was having to do and recommended that he get an expert meter. AR 1110. Additionally, Plaintiff admitted that when his pain flared his diabetes care declined. AR 958.

The record does not support the ALJ's conclusion that Plaintiff failed to follow a prescribed course of treatment. Plaintiff admitted he felt overwhelmed at times, especially when his hidradenitis flared, but the record shows that after Plaintiff began care with Dr. Soltman, he made an informational appointment to learn about proper care and diet. AR 1010. Plaintiff monitored his glucose levels on average five times per day and rarely missed his medication. *Id.* Plaintiff tried to comply with his diet. He also received a meter and used it. AR 964, 958. Dr. Soltman noted that Plaintiff was "working hard to improve" his glycemic control. AR 990,

1110. Accordingly, the ALJ's conclusion that Plaintiff failed to follow a prescribed course of treatment is not a clear and convincing reason supported by substantial evidence to reject Plaintiff's subjective symptom testimony.

### 2. Improvement with Treatment

The ALJ discounted Plaintiff's subjective symptom testimony because the ALJ found that Plaintiff's diabetes, mental health, and hidradenitis suppurativa symptoms improved with treatment. A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). For mental health symptoms, "reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms and with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017 (simplified). As the Ninth Circuit explained in *Garrison*:

> It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

The ALJ noted three signs of improvement in Plaintiff's diabetes symptoms. The first is that Plaintiff had full strength in his legs and feet. AR 977. The second is that Plaintiff's pain decreased with an increased dosage of Percocet. AR 915. The last is that Plaintiff's glycemic control improved after he started using an insulin pump. AR 1940.

These improvements were temporary, however, as Plaintiff's symptoms did not disappear, and his condition did not improve much. Considering Plaintiff's overall diagnostic picture with respect to his diabetes, the level of improvement is not a clear and convincing reason to discount Plaintiff's testimony. "Improvement with treatment is to be expected. The mere occurrence of 'some improvement,' does not undermine a treating physician's opinion that their patient's impairments render him unable to work." *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017). Although Plaintiff mentioned that an increased dosage of Percocet "helps a lot," his pain eventually returned. AR 730. As Plaintiff's pain returned, he was prescribed higher dosages of Percocet and given Gabapentin to use during the day. AR 915, 894. After Plaintiff began using an insulin pump, he noted that he hoped to be feeling better, but still suffered from pain and fatigue. AR 1934. Later, Plaintiff's doctor stated that 5mg of Percocet was no longer adequate because of Plaintiff's increased tolerance for medication and because he thought his neuropathy had progressed. AR 1984. The ALJ erroneously determined that short term improvements to Plaintiff's diabetes symptoms were a reason to discredit his subjective symptom testimony. A full examination of the medical record shows that Plaintiff's diabetes symptoms did not significantly improve.

The ALJ also attempted to discount Plaintiff's subjective symptom testimony because of improvements the ALJ found with Plaintiff's mental health. The ALJ cited Plaintiff's absence of psychiatric hospitalization and his mental status examination results demonstrating his cognition, memory, and attention as mostly within normal limits as signs of improvement. AR 25. The ALJ also relied on treatment notes that suggested improvement in Plaintiff's mental health with medication and counseling. AR 25. The fact that Plaintiff never entered a psychiatric hospital or

outpatient clinic, however, does not mean that Plaintiff never experienced disabling mental health issues.

During Plaintiff's initial assessment with a doctor for cognitive and memory issues he scored low for attention and delayed memory. AR 1121. His immediate memory was considered borderline. AR 1121. After his first session with a speech pathologist he scored 100% accuracy with an immediate and delayed recall exercise. AR 1126. After two sessions he scored 100% on a mental math exercise. AR 1137. Throughout all his visits, his pain was noted as something that could exacerbate his cognitive abilities. AR 1126. The ALJ properly accounted for Plaintiff's cognitive abilities by limiting him to simple tasks in his RFC. AR 22. The ALJ cited substantial evidence that demonstrates Plaintiff's cognitive functions and memory are at a level where he can perform simple tasks.

The ALJ also noted Plaintiff's improvement with counseling and medication as a reason to reject his testimony. The ALJ's analysis, however, fails to incorporate the whole medical record. The ALJ began by citing a meeting in 2016 during which Plaintiff's doctor stated that Plaintiff had improved and was no longer showing signs of anxiety. AR 731. To treat his anxiety, Plaintiff was prescribed Ritalin and Adderall. AR 731. AR 742. Later that same year, Plaintiff's doctor noted that Plaintiff exhibited signs of anxiety. AR 745. In a 2017 meeting with his doctor, Plaintiff's symptoms improved, and he was described as not having anxiety. AR 883. Then in 2018, Plaintiff's anxiety worsened. From April to July he received scores above 10 on the GAD-7 test, indicating moderate to severe anxiety. AR 1326, 1318, 1314, 1310, 1306. Thus, it appears that Plaintiff's mental health symptoms waxed and waned. The ALJ's analysis did not appear to take this into consideration.

The ALJ also focused on Plaintiff's hidradenitis suppurativa becoming controlled as another reason to discredit Plaintiff's symptom testimony. On April 3, 2017, Plaintiff told his doctor that wearing tight fitting clothes is his "biggest trigger" and that he "does not have any problems" with his hidradenitis suppurativa when he wears loose fitting clothes. AR 1112. On September 21, 2017 and October 18, 2017, however, Plaintiff had procedures to treat outbreaks of his hidradenitis suppurativa in his right inguinal fold. AR 1147, 1149. Thus, wearing loose fitting clothes did not, by itself, fully resolve his condition. On January 29, 2018, Plaintiff reported that limiting himself to working one day per week and limiting sitting on hard surfaces had "kept things under control for the past 3 months." AR 1150. During both his April 2017 and his January 2018 doctor visits, Plaintiff reported washing with Hibiclens as an additional approach to helping maintain his condition. AR 1112, 1150. The ALJ focused on Plaintiff's statement that his hidradenitis suppurativa was not a problem when he wears loose fitting clothes as the reason his condition improved. AR 23. The ALJ acknowledged later in his decision, however, that Plaintiff's reduction in number of workdays, limiting sitting to hard surfaces, washing with Hibiclens, and lifestyle modifications were what "controlled" his hidradenitis suppurativa. AR 24.

In providing his *reasons* for discounting Plaintiff's testimony, the ALJ focused on Plaintiff's modification of wearing loose fitting clothing and ignored Plaintiff's additional lifestyle modifications. The ALJ focused on Plaintiff wearing loose fitting clothes, despite the fact that several months after doing so, Plaintiff required two injection treatments in September and October 2017. Plaintiff later reported in January 2018 that it was adding the additional lifestyle modifications of reducing work to one day per week and reducing sitting on hard surfaces that helped improve his condition. Although the ALJ acknowledged this in his opinion,

he did not include these modifications in his reasons and did not include them in his RFC. Further, in the record there are two examples in which Plaintiff sat for consecutive days and developed a cyst. A cyst developed when Plaintiff worked three days back to back in 2017 and another one developed seven months later when he took a four-day road trip to Mt. Rushmore. AR 955, 983. It is unclear whether Plaintiff wore loose fitting clothes during those two incidents, but the evidence suggests that sitting for long periods of time makes his condition worse. The ALJ failed to explain why wearing loose fitting clothes was the sole reason Plaintiff's condition improved. The ALJ never explained why it was Plaintiff's loose fitting clothes and not Plaintiff's other lifestyle modifications that controlled Plaintiff's hidradenitis suppurativa. For the reasons stated above, the ALJ's reasoning to discredit Plaintiff's subjective symptom testimony because of improvement with treatment is not clear and convincing and supported by substantial evidence.

### 3.  Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective symptom testimony. The ALJ did not show that Plaintiff failed to follow a prescribed course of treatment or that his symptoms improved with treatment. The subjective symptom testimony

cannot be rejected by the ALJ solely because of lack of support in the medical evidence. *Robbins,* 466 F.3d at 883. Thus, the ALJ's reasoning for rejecting Plaintiff's subjective symptom testimony because of purported lack of support in the medical evidence is not clear and convincing.

## B. Medical Evidence

Plaintiff contends that the ALJ erred in discounting the opinion of the treating physician, Dr. Jesse Keller. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit and the Commissioner[3] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1527(c)(1), (2). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, a court gives the treating physician's opinion controlling weight. *Holohan*, 246 F.3d at 1202; *see also* 20 C.F.R. § 404.1527(d)(2). A court may reject a treating doctor's uncontradicted opinion only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If the opinion of another physician contradicts a treating doctor's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

---

[3] Because Plaintiff filed his application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527, and the revised rules relating to the consideration of medical opinion testimony do not apply.

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R. § 404.1527(c)(1). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of another physician contradicts the opinion of an examining physician, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1012-13; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

PAGE 16 – OPINION AND ORDER

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

The ALJ gave some weight to the opinion of Dr. Keller, Plaintiff's treating physician. Dr. Keller completed a questionnaire provided by Plaintiff's attorney. AR 1893-95. Dr. Keller opined that Plaintiff's hidradenitis suppurativa equaled Listing 8.06. AR 1894. Listing 8.06 requires "extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." *Id.* Dr. Keller concluded that Plaintiff's condition did not meet the exact criteria of this listing, but that, as a whole, is equivalent in medical severity to Listing 8.06. *Id.* Dr. Keller explained his equivalency finding was because Plaintiff's hidradenitis suppurativa "causes painful abscesses requiring office visit for draining & injection if sitting for longer than 8 hours." *Id.* Dr. Keller also stated that Plaintiff could not work consecutive days and would have to miss three days of work per week. *Id.*

The ALJ provided three reasons for giving less weight to Dr. Keller's opinion. First, the ALJ concluded that there was a contradiction between Dr. Keller's medical notes stating that Plaintiff's condition was mild to moderate and Dr. Keller's opinion that Plaintiff's hidradenitis suppurativa has the equivalent medical severity of Listing 8.06. This is not a specific and

legitimate reason because there is no contradiction. A condition can be mild to moderate but still cause painful and disabling symptoms. *See, e.g.*, *Ellefson v. Colvin*, 2016 WL 3769359, at *6 n.5 (D. Or. July 14, 2016) (reasoning that a mild condition "do[es] not necessarily equate to mild functional limitations"). Plaintiff's hidradenitis suppurativa could be described as a mild to moderate condition in that it does not pose life threatening symptoms. The symptoms, however, can be painful and severe. In his underlying records, Dr. Keller noted that Plaintiff experienced severe pain from his hidradenitis suppurativa. AR 953, 1149. Other providers have also noted Plaintiff's severe pain when he has flareups. *See* AR 1398, 1800. Further, in the same chart note that Dr. Keller described the condition as mild to moderate, he also stated that it "is a disease with no clear cause and no cure, and no consistently effective treatment." AR 1105. There is no inconsistency in a doctor characterizing a condition that is incurable, ineffectively treatable, and causes severe pain during flareups, but does not cause risk to life or limb, to be both "mild to moderate" and to meet Listing 8.06. Listing 8.06 is focused on the severity of the lesions (addressed by Dr. Keller in his questionnaire response noting that Plaintiff's lesions require injections) and the persistence of the lesions despite treatment (addressed by Dr. Keller in explaining that Plaintiff's lesions appear if he sits for longer than eight hours), not whether the condition is characterized as mild to moderate. The ALJ did not discuss how Dr. Keller addressed the elements of Listing 8.06. The ALJ erred by claiming Dr. Keller's medical opinion and chart notes contradicted each other.

Second, the ALJ stated that when Plaintiff had "a procedure" for a pilonidal cyst, he tolerated it well and without complications. AR 27. The ALJ does not explain how the fact that Plaintiff tolerated his treatment for his pilonidal cysts is a specific and legitimate reason to discount Dr. Keller's opinion. Dr. Keller noted that Plaintiff had a history of treating his

pilonidal cysts with surgery. *See* AR 1112. Plaintiff had incisions and surgical interventions for

his cysts many times, including in March 2008, March 2013, May 2013, and August 2013. AR

1399, 1548, 1802, 1868. Plaintiff continued to have flareups after these treatments, so they do

not reflect improvement with treatment. Additionally, Plaintiff's medical record is replete with

Plaintiff having symptoms from his hidradenitis suppurativa treated with various procedures.

*See, e.g.*, AR 645-46, 799, 864, 953, 956, 984, 993, 1147, 1149, 1399, 1548, 1802, 1868. These

treatments are recurrent and invasive. They do not support that Plaintiff's symptoms are mild and

nondisabling, but rather, support the opposite.

Third, the ALJ claimed there was an inconsistency between Plaintiff's testimony and

Dr. Keller's opinion. The ALJ gave less weight to Dr. Keller's opinion because Plaintiff stated

he controlled his hidradenitis suppurativa with lifestyle modifications. AR 1151. Dr. Keller's

opinion, however, reflected Plaintiff's lifestyle modifications. The lifestyle modifications

included working one day per week, limiting sitting on hard surfaces, and washing three times a

week with Hibiclens. AR 1150. Dr Keller's opinion included that Plaintiff could not work

consecutive days and should limit sitting on hard surfaces. AR 1894, 1150. The ALJ erred in

stating that Plaintiff's testimony conflicted with Dr. Keller's opinion.

## C.  Step Five Analysis

At step five, the burden shifts to the commissioner to show that a claimant can perform

other work that exists in significant numbers in the national economy. *Tackett v. Apfel*, 180 F.3d

1094, 1100 (9th Cir. 1999). The ALJ can meet his or her burden, in part, by obtaining the

testimony of a vocational expert (VE). Plaintiff challenges whether the specific jobs found by the

VE can be performed based on Plaintiff's RFC. Because the Court has found that the ALJ failed

properly to evaluate Plaintiff's testimony and the opinion of Dr. Keller, however, the RFC and

hypothetical posed to the VE may not have incorporated all of Plaintiff's limitations. A

hypothetical posed to the VE must be complete and "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the testimony has no evidentiary value." (simplified)). Thus, the ALJ erred in relying on the VE testimony that there were jobs with significant numbers in the national economy that Plaintiff could perform. The Court, therefore, need not reach Plaintiff's arguments regarding the specific jobs found by the VE at step five.

**D. Remand for Further Proceedings**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be

resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ erred by not providing clear and convincing reasons to reject Plaintiff's subjective symptom testimony and the ALJ failed to clearly explain his reasoning related to Plaintiff's hidradenitis suppurativa. The ALJ also erred in failing to provide specific and legitimate reasons for discounting Dr. Keller's opinion. The record, however, is not fully developed and free from conflicts and ambiguities. There are conflicting medical opinions between Dr. Keller and Dr. Steven Goldstein and uncertainty regarding whether Plaintiff's hidradenitis suppurativa is adequately controlled in a manner that requires lifestyle modifications that would preclude him from working. Further proceedings would be useful so that the Commissioner may evaluate the issues addressed in this Opinion and Order.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED and this case REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 3rd day of August, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge